McBee v. Bicket et al.

(In Banc.  Oct. 23, 1944.)

[19 So. (2d) 497.  No. 35649.]

Bell & McBee, of Greenwood, for appellant.

150

Cooper & Thomas, of Indianola, for appellees.

Argued orally by **Forrest B. Cooper**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

The question for decision herein is whether a certain cotton gin is, or is not, a part of the property covered by a lease of what is called the MayFair Plantation executed by appellant as lessor to appellees as lessees. The chancellor found that the lease includes the gin, from which Mrs. McBee appeals.

The question is to be determined by a construction of the lease contract in the light of the circumstances surrounding the parties and the property at the time of its execution.

The contract, dated November 21, 1942, described the property as:

"That certain plantation comprising 889 acres, more or less, and known as MayFair Plantation, situated and located in Sunflower County, Mississippi; said plantation being the same plantation heretofore leased to J. C. Allen of Sunflower County, Mississippi, by the Lessor in Sun-

flower County, and being the only plantation owned by the Lessor in Sunflower County, and being the same plantation pointed out to the lessees and accepted by them; and together with the rights to connect with the flowing artesian well on adjacent property and the right to use water from said flowing well reasonably necessary for the operation of said plantation, and for the use of the tenants thereon."

The lease is for five years, from January 1, 1943, to December 31, 1947, and the consideration to be paid by lessees therefor totals $25,000, payable in designated yearly payments, except that five thousand dollars thereof was to be expended in accordance with the specifications already prepared for the repair of the main dwelling and thirteen of the tenant houses located on said plantation. It will be noted the gin is not specifically mentioned but it is actually located on the MayFair Plantation.

At the time of the death of Mr. G. A. Wilson November 30, 1930, he owned, and for many years prior thereto had owned, a number of large plantations in Sunflower County, Mississippi, one of which was the Markham Plantation, comprising some sixteen to seventeen hundred acres of land. The gin in question was located on that plantation. From the date of his death to June 16, 1936, the plantation was operated by his heirs as a unit. On that date his heirs partited the lands of the estate. The deed conveyed to Mrs. McBee, appellant, a daughter of Mr. Wilson, "All that part of the Markham Plantation that lies north and east of the Baird-Klondike Road, and also all of the Northeast Quarter of Section 31, Township 18, North, Range 3, West, together with an undivided one-half interest in and to the gin-house, seed-house and wagon shed lot . . . ," describing by metes and bounds the gin lot, followed by this recital: "The above described tract of gin, seed and wagon shed land is situated in the Southeast Quarter of Section 13, Township 18, Range 4 West, and is the Markham Plantation Gin Lot." Then this recital: "It being the intention to

describe the May Wilson McBee part of the said Markham Plantation . . . ." The deed then conveyed to Mrs. Yandell, a sister of Mrs. McBee, all of the Markham Plantation not theretofore conveyed to Mrs. McBee, saying that the McBee part is that part of the Markham Plantation north and east of said public road "and the said Northeast Quarter of the said Section thirty-one . . . ," which appears to be south of the road. There is a further stipulation that they, Mrs. McBee and Mrs. Yandell, shall "jointly own the gin property." And further: "It being the intention to describe the N. W. Yandell part and the May Wilson McBee part of the said Markham Plantation." All of Mrs. Yandell's land is south of the public road. The gin is located north of the road. This was the first time the gin lot was specifically and separately described, and presumably the reason therefor was to be certain to vest in Mrs. Yandell a half interest therein, since the gin is across the road from her part of the land and is located on the MayFair part.

Mr. J. C. Allen rented the Yandell plantation in 1933 and later brought it, with her half interest in the gin property, and he leased for the years 1941 and 1942 the MayFair Plantation from McBee for a rental of $3,500 and $4,000 per year respectively. The gin property was included in his lease with Mrs. McBee, although, because of a question of description in the original lease, a later supplemental description of the gin lot was made, which is not in the record. However, there is no question Mr. Allen got the gin under his lease, for the one consideration, and used and operated Mrs. McBee's half interest therein in connection with MayFair Plantation.

It might be added here that during all the time the Markham Plantation was owned by Mr. Wilson and his heirs and down to the lease to appellees this gin was used exclusively in ginning the cotton produced on the Markham Plantation when operated as an entity and on the Yandell and McBee plantations after the partition. It was a private and not a public gin.

It will be noted the McBee-Bicket lease described the leased property as "being the same plantation heretofore leased to J. C. Allen . . . ."

Shortly after going into possession of the premises, the Bickets, because of some confusion in "certifying" the cotton seed from the joint operation, made an arrangement with Allen for the exclusive operation by him of the gin, and in August, 1943, appellant had an offer of $5,800 for purchase of her interest therein, which situation gave rise to this litigation.

It is explained in the evidence that the reason the lease dealt specifically with the rights of Mrs. McBee in the artesian well was because the well is located south of the road and on the Yandell part.

Mr. Dalton McBee, brother-in-law of appellant, and who assisted her in the management of MayFair Plantation, and who conducted the preliminary negotiations for the lease with the Bickets, testified: "The only thing said with reference to the gin, when we were talking about him buying it—he said he wasn't interested in the gin." That was prior to the lease negotiations and said to Mr. Bicket who was discussing the purchase of the plantation. Appellant testified that ". . . it (the gin) does not look like it belongs to the plantation." On the other hand, it is shown there was no fence or enclosure about the gin property separating it from the rest of the plantation.

From the foregoing it is clear, we think, that this gin was used and considered a part of the plantation, and was included within the designation "MayFair Plantation" as used in the lease. This conclusion is strengthened by the certainty of confusion and conflict which would result from the attempt to operate this gin one-half public, or by not owning MayFair Plantation, and the other half private in ginning the cotton from the Yandell plantation. It is difficult to see how such public operation of a one-half interest, or the use of that half interest in

ginning cotton from plantations other than MayFair, could be adopted and made to conform to the proper use and operation of the other half interest in ginning the cotton produced on the Yandell plantation.

Affirmed.